STATE of Missouri ex Inf. Thomas F. EAGLETON, Attorney General of Missouri, ex rel. REORGANIZED SCHOOL DISTRICT R–I OF MILLER COUNTY, Missouri, and Louie Apperson, Oran D. Clawson, Harold Clotworthy, Thomas Banner, Emmett W. Dunstan and Roscoe Denny, Constituting the Board of Directors of Reorganized School District R–I of Miller County, Missouri, and Emmett W. Dunstan, Individually, Relators,

v.

Charles VAN LANDUYT, Jim F. Hughes, James L. Walton, Roy C. Gerber, George Berkstresser, and W. F. Wornell, the Pretended Board of Directors of the Purported Reorganized School District R–III of Morgan County, Missouri, Respondents.

No. 49301.

Supreme Court of Missouri,

En Banc.

Aug. 6, 1962.

Motion for Rehearing Denied
Sept. 10, 1962.

Harry H. Kay, Eldon, and John W. Inglish, Jefferson City, for relators.

Edgar Shook, David R. Hardy and David H. Clark, Kansas City, and William G. Johnson, Versailles, for respondents; Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, of counsel.

HOLLINGSWORTH, Judge.

This is an original proceeding in the nature of quo warranto brought by the Attorney General at the relation of allegedly Reorganized School District R–I of Miller County, its alleged directors, and an individual resident taxpayer of said district, hereinafter referred to as Relators, against the persons allegedly elected directors of allegedly Reorganized School District R–III of Morgan County. Both of these school districts were recently reorganized, purportedly in accordance with the laws of this state; and both assert jurisdiction

over an area consisting of four former common school districts.

Prior to the formulation and adoption of the reorganization plans in question here, *one of which is valid,* there existed four common school districts numbered and known as No. 58, Routon, No. 59, Barnett, No. 61, McKinley, and No. 62, Joe Taylor, hereinafter referred to by numbers only. All of these districts lay wholly within Morgan County and adjoined Miller County Reorganized School District R–I and Morgan County Reorganized School District R–II. By virtue of the reorganization plans at issue, Reorganized School District R–III of Morgan County claims jurisdiction over all of former Districts Nos. 58, 59, 61 and 62; and Reorganized School District R–I of Miller County claims jurisdiction of said former districts, except Sections 4, 9 and 16, Township 40 North, Range 16 West, of Morgan County. Relators contend that Reorganized School District R–III of Morgan County is not a validly organized district and respondents contend that it is.

The facts giving rise to this dispute are: In the first plan of reorganization, submitted June 27, 1949, by the Morgan County Board of Education and approved by the State Board of Education, under the school reorganization law enacted in 1947, the Morgan County Board released to the Miller County Board of Education eight common school districts in the eastern part of Morgan County, including said Districts 58, 59, 61 and 62. The first plan of reorganization submitted by the Miller County Board included said eight districts in Morgan County, with a high school center at Eldon. That plan was disapproved by the voters on August 23, 1949. From that date until June 3, 1960, the Miller County Board did not submit to the State Board a school district reorganization plan incorporating therein any Morgan County school districts. A subsequent plan of reorganization prepared by the Morgan County

Board and approved by the State Board, submitted on May 23, 1951, included the formation of a single Morgan County enlarged elementary district from the eight districts in the eastern portion of said county, including the four districts here involved, but said proposed plan was not approved by the voters of the proposed reorganized district.

A third plan of reorganization submitted by the Morgan County Board on September 28, 1953, set aside said eight districts, including Districts 58, 59, 61 and 62, in the eastern portion of Morgan County "to be included in some future reorganization with an area in Miller County, included in the main in District R–I, Miller County, Missouri." A proposal to form District R–II of Morgan County in said plan was adopted and subsequently two of the said eight districts on the eastern edge of Morgan County were annexed to District R–I of Miller County, which had been previously organized.

A fourth plan of reorganization by the Morgan County Board and dealing with the remaining four districts in the eastern part of Morgan County, submitted on April 2, 1957, was disapproved by the State Board of Education. At that time six common school districts in eastern Morgan County, inclusive of the four districts here involved, were not a part of any reorganized district. Subsequently, two more of said districts in eastern Morgan County were annexed to Miller County Reorganized School District R–I, leaving the four districts here involved still not reorganized.

On May 15, 1959, the Miller County Board requested the Morgan County Board to release to the Miller County Board for reorganization into Miller County District R–I the four districts in Morgan County here involved. On June 3, 1959, the Morgan County Board declined to accede to that request.

On July 2, 1959, the Miller County Board submitted to the State Board its third plan of reorganization which did not include any Morgan County school districts. There was not at this time any Morgan County plan on file with the State Board.

On May 27, 1960, the Morgan County Board submitted to the State Board a plan of reorganization for Morgan County which called for enlarged District R–III to include the then existing R–II District of Morgan County and said Districts 58, 59, 61 and 62.

On June 3, 1960, the Miller County Board submitted to the State Board a plan of reorganization for Miller County which included Districts 58, 59, 61 and 62. That plan called for Miller County Reorganized School District R–I to include the then existing District R–I with the high school center at Eldon and all of said Districts 58, 59, 61 and 62, except Sections 4, 9 and 16 in Township 40 North, Range 16 West, in Morgan County. (That plan further proposed an enlarged District R–II of Miller County to include the School of the Osage, District C–I, and that part of Morgan County District No. 62 described as Sections 4, 9 and 16 in Township 40 North, Range 16 West, in Morgan County. That feature of the plan is of no material significance to the issues here.)

The State Board examined the plans of reorganization submitted by the Morgan County Board on May 27, 1960, and by the Miller County Board on June 3, 1960, and noted that each of said plans proposed the inclusion of Districts 58, 59, 61 and 62. On June 6, 1960, the State Board advised both the Morgan County Board and the Miller County Board that the proposed plan of reorganization submitted by each of them had been disapproved and recommended that the boards of these counties cooperate by way of mutual discussion to determine whether an agreement could be reached *in the best interest of the pupils involved* in the aforesaid four districts before resubmission of the plans within the next sixty days. On June 8, 1960, the Miller County Board wrote the Morgan County Board requesting a meeting between the two boards for the purpose of complying with the recommendation of the State Board. On July 9, 1960, the Morgan County Board advised the Miller County Board that the Morgan County Board did not consider that a common problem of reorganization existed between the Morgan County Board and the Miller County Board.

On July 8, 1960, the State Board received from the Morgan County Board a plan of reorganization for Morgan County which was the same plan theretofore submitted by the Morgan County Board on May 27, 1960, and disapproved by the State Board on June 6, 1960. On July 11, 1960, the State Board received from the Miller County Board a plan of reorganization for Miller County which was the same plan as that previously submitted by the Miller County Board on June 3, 1960, and disapproved by the State Board on June 6, 1960. In its letter of transmittal, the Miller County Board appealed to the State Board to determine whether Districts 58, 59, 61 and 62 of Morgan County should be included in the Miller County or Morgan County plan.

On July 11, 1960, the State Board, through its Director of School Reorganization and Transportation, wrote the Morgan County Board advising it of the resubmission of the Miller County Board plan and that said Miller County plan still included Districts 58, 59, 61 and 62. On July 12, 1960, the Morgan County Board wrote the State Board informing it that there was not sufficient time for it to present information in support of its plan at the scheduled meeting of the State Board on July 15, 1960, and requested that no action be taken on either plan on that day, in order to give the Morgan County Board

an opportunity to study the Miller County plan and submit information on it.

The meeting of the State Board scheduled for July 15, 1960, was postponed for lack of a quorum. On July 26, 1960, the Morgan County Board wrote the Director of School Reorganization and Transportation of the State Board requesting a "hearing" before the State Board. On August 11, 1960, the State Board advised the Morgan County Board that it was the policy of the State Board not to hold "hearings" on proposed reorganization plans and suggested that the Morgan County Board present whatever additional factual information it desired to the Reviewing Committee of the State Department of Education to be made available to the State Board.

Without complying with this request, the Morgan County Board, on August 16, 1960, filed a petition for a writ of prohibition against the State Board of Education in the Circuit Court of Cole County seeking to prohibit it from proceeding further with consideration of any plan of school reorganization relating to Districts 58, 59, 61 and 62 in Morgan County other than that submitted by the Morgan County Board. On September 26, 1961, the Circuit Court of Cole County, after trial of the issues in that proceeding, entered judgment discharging its priorly issued preliminary rule in prohibition. On October 6, 1961, the Morgan County Board filed its appeal in the Supreme Court of Missouri in Cause No. 49,126, where it is now pending. (Concededly, the final adjudication of the issues here presented will be determinative of that appeal.)

After the decision of the Circuit Court of Cole County denying the writ of prohibition, the State Board proceeded to consider both the Morgan County plan of reorganization and the Miller County plan, each of which, as stated, included Districts 58, 59, 61 and 62, and on October 27, 1961, ruled that Districts 58, 59, 61 and 62, except Sections 4, 9 and 16 in Township 40 North, Range 16 West, in Morgan County, should be placed in the Miller County Proposed District R–I and thereupon approved the Miller County plan and disapproved the Morgan County plan. In arriving at its decision, the State Board found "the territory in the four Morgan County Districts, No. 58, No. 59, No. 61, No. 62, to be more accessible for attendance at school centers in the Miller County proposals and for the past several years the eligible high school pupils have attended the high school centers included in the Miller County proposals."

On November 16, 1961, the Morgan County Board submitted its plan to the voters and said plan received a majority vote at such election; on November 28, 1961, the Miller County Board submitted its plan to the voters and that plan also received a majority vote at the election. On December 4, 1961, an election was held in Reorganized School District R–III of Morgan County at which election respondents claim to have been elected directors of said Reorganized School District R–III of Morgan County; on December 14, 1961, an election was held in Reorganized School District R–I of Miller County, at which election the relators suing herein as directors claim to have been elected directors of Reorganized School District R–I of Miller County.

There is at this time pending in the Circuit Court of Morgan County a mandamus action seeking to compel the directors of former School District No. 59 of Morgan County to turn over to Reorganized School District R–III of Morgan County all property, records, books and papers belonging to the former Morgan County School District No. 59. There is also pending in the Circuit Court of Morgan County an injunction proceeding seeking to restrain the County Treasurer of Morgan County from turning over to Reorganized School District R–III of Morgan County any money

now in his hands or which may hereafter come into his hands as County Treasurer by reason of taxes levied and assessed against property in Districts 58, 59, 61 and 62, except Sections 4, 9 and 16 in Township 40 North, Range 16 West, in Morgan County.

Relators contend that the reorganization proceedings and election of respondents as directors of Reorganized School District R–III of Morgan County were illegal and void for the reasons that such proceedings and election were instituted and conducted by the County Board of Education of Morgan County after the State Board had resolved adversely to the Morgan County Board an organizational question existing between the county boards of Miller and Morgan Counties by the approval of the plan of reorganization submitted by the Miller County Board, which plan included the four districts in question (58, 59, 61 and 62) within Reorganized School District R–I of Miller County. That contention is based upon the provisions of § 165.-673, RSMo 1959, V.A.M.S.[1] Section 165.-673 requires in material substance that each county board of education conduct a study of each school district in its county and prepare a plan of reorganization; and that the study so made include (a) the assessed tax valuation of the existing and proposed districts; (b) the size, geographical features and boundaries of the proposed districts; (c) statistical information as to the number of pupils and attendance and population statistics; (d) location and condition of school buildings and their accessibility to pupils; (e) locations of roads, highways and natural barriers; (f) high school facilities; and (g) and (h) other factors not here directly material. And directly material is Paragraph (4) of said § 165.673, which provides that said county boards shall "cooperate with boards of adjoining counties in the solution of common organization problems, and submit to the state board of education *for final decision*

any and all organization questions on which the cooperating boards fail to agree." (Emphasis supplied.) The State Board construes Paragraph (4), above quoted, to vest it with jurisdiction to *finally decide* disputes such as is here presented and it has invoked and applied the provisions of that paragraph on numerous occasions.

Respondents contend first that, despite the provisions of said section, Reorganized School District R–III of Morgan County was lawfully organized and that the respondent directors are lawfully holding office by virtue of the district having been formed pursuant to law by adoption by the electorate of a plan of reorganization initially filed by the Morgan County Board of Education with the State Board of Education on May 27, 1960, by which filing the Morgan County Board acquired original, prior and exclusive jurisdiction. That contention is based upon the well established principle of law that, when several separate authorities have *concurrent* jurisdiction of the same subject matter, the one in which proceedings were first commenced has exclusive jurisdiction to end the controversy. Respondents also further contend that even if the doctrine of prior jurisdiction above announced be found not controlling, yet § 165.673(4), relied upon by relators, still is not here applicable and dispositive of the issues here presented, because no common organization problem existed between the Miller and Morgan County Boards within the meaning of § 165.673(4).

These conflicting contentions require that we first determine the meaning and applicability of the above quoted portion of § 165.673(4) to the facts herein shown.

The establishment and maintenance of a public school system is primarily a function of the state to be exercised by the legislature, whose powers are not to be fettered if exercised within the limits of the

---

1. To which revision all statutory references are made unless otherwise indicated.

Constitution. 78 C.J.S. Schools and School Districts § 13, pp. 624 et seq.

As early as 1913 (Laws 1913, p. 721, § 3), the legislature recognized that the welfare of the school system might require the consolidation of school districts lying in two or more counties and it established an enabling procedure therefor. In 1931 (Laws 1931, p. 334, § 3), an act provided that in forming proposed enlarged school districts to consist of territory in two or more counties, the county superintendents of the counties affected "shall agree upon the boundaries." It failed to provide, however, what should be done if the county superintendent of any county containing a portion of such district refused to so agree; and so the law remained as thus limited until the Reorganization Act of 1947. Section 165.673 of the reorganization act obviously undertook to correct that omission in the law by the inclusion of Paragraph (4) above set forth.

In challenging the applicability of that section to the facts here presented, respondents suggest, among other things, that it is not amiss to reflect upon a clause appearing in § 165.170 (which relates solely to common school districts and is not even asserted to be controlling here) declaring "in changing the boundary line between the two established districts, one district shall not encroach upon the other simply for the acquisition of territory." But respondents do not even attempt to assert that the State Board was actuated in its decision that Districts 58, 59, 61 and 62 should be incorporated in Reorganized School District R–I of Miller County simply for the acquisition of territory. Rather do they say merely that nowhere do the statutes in terms provide that a common organization problem exists when a school district reorganization proposal of one county includes territory in another. That, insofar as we are advised, is true. But that fact, as we see it, establishes nothing. Neither do the statutes say what does constitute a "common organization problem." It would seem that so many common organization problems may arise out of such a variety of factors or a combination thereof as to have made it unwise, if not impossible, for the legislature to attempt to set forth a definitive enumeration thereof.

One illustrative instance of a common organization problem is found in the case of Glasgow School District No. 60 et al. v. Marshall et al., K.C.Ct. of App., 333 S.W. 2d 547. There the facts, as stated by the court, loc. cit. 549, were: "In April, 1949, the Howard County Board proposed to the State Board that the structure of school districts in that county remain as it had previously been, that no change in district lines be made. This plan was disapproved by the State Board. Not until June 12, 1958, did the county board submit a second plan, which was disapproved by the State Board. However, before such action was taken by the state the Chariton County Board submitted a plan of reorganization affecting territory in Howard as well as in Chariton County, and asked that the Howard County plan be disapproved. Before further action by the State Board, Howard County submitted another revised plan. The State Board disapproved all plans submitted and ordered the Howard County Board to call an election and submit to the voters a new plan of reorganization, prepared by the State Board, providing for R–2, (Glasgow) which includes territory in Howard, Saline and Chariton Counties, and for districts R–1 and R–3 comprised of territory wholly within Howard County. The Howard County Board failed to comply with the order of the state board but, instead, ordered an election to be held whereby the voters should approve or disapprove its plan of reorganization."

It was appellant Howard County's contention in that case, as it is respondents' contention here, that notwithstanding the order of the State Board directing the submission of a new plan prepared by it, How-

ard County's plan was authorized under the provisions of § 165.677, which in material substance provides that, upon receipt by the state board of the county board's plan of reorganization, the state board shall examine and approve or disapprove the same and notify the county board of its action; that, if it shall disapprove, the county board shall have sixty days to review the rejected plan and submit a revised plan to the state board for its approval; that, if the revised plan is disapproved, the county board is required to "propose and submit its own plan * * * to the voters."

It was appellees' (Glasgow District, et al.) contention that § 165.673(4) was applicable and controlling. The court upheld the latter contention, saying, loc. cit. 550: "This situation clearly calls for action by the State Board, under the provisions of Subparagraph (4) of Section 165.673. The Howard County board was thereby commanded to 'cooperate with boards of adjoining counties (Chariton and Saline) in the solution of common organization problems, and submit to the state board of education *for final decision* any and all organization questions on which the cooperating boards fail to agree.' * * * The case of State ex rel. Corder School Dist. No. R–3 v. Oetting, Mo.App., 245 S.W.2d 157, cited by defendants, does not support defendants' contention that the Howard County board had acquired prior and exclusive jurisdiction to submit its plan at an election because, in that case, all territory involved lay exclusively within Lafayette County, and no other county board of education had a legal interest in the matter. The provisions of Subsection (4) of Section 165.673, supra, had no application under those facts. * * * There is no conflict between the provisions of Sections 165.673 and 165.677, supra. The former makes provision for final adjudication of differences arising out of common problems of organization between various county boards; the latter provides a method for

final solution of differences between a county board and the state board as to questions of reorganization of school districts where the territory lies wholly within one county, *where no other county board has a legitimate interest therein.*[2] The two sections are harmonious and both are essential to a workable and efficient plan for the much needed reorganization of our schools."

Respondents herein further contend, however, that the phrase last above emphasized makes the Glasgow District case inapplicable here, stating that the above quotation means, in effect, "that where the territory encompassed in the plan lies wholly within one county, then no other county board has a legitimate interest therein." We think that contention cannot stand; it is directly contrary to the purpose of § 165.673 itself. In express terms, that section requires the boards of adjoining counties to submit to the state board for final decision *any and all* common organization questions on which they fail to agree. The question is, therefore, do the facts in this case present a common organization question upon which the Miller and Morgan County Boards have failed to agree? If they do, then of course the jurisdiction of the State Board supersedes the jurisdictions of the County Boards as provided by § 165.677.

A brief recapitulation of these facts is necessary. In 1949, the Miller County Board and the State Board approved a plan including the four districts in question (and four others) in Miller R–I, but the voters rejected the plan. Later, in 1953, the Morgan County Board deemed it to the best interest of all eight of the aforesaid unreorganized common school districts, including Districts 58, 59, 61 and 62, that they be "included in some future reorganization with an area in Miller County, included in the main in District R–I, Miller

---

2. Emphasis supplied by this court for further reference.

County, Missouri." District R–I of Miller County thereupon took two of said eight districts; later it took two more, thereby leaving unsettled the problem of Districts 58, 59, 61 and 62. Thereafter, Miller County requested Morgan County to release to it said four districts. Morgan declined. Later, on May 27, 1960, Morgan sought to include said four districts in a plan submitted to the State Board. On June 3, 1960, Miller sought to include said districts in Miller R–I with the high school center at Eldon. The State Board, long since familiar with the situation thus presented, disapproved both plans and suggested that these counties cooperate to the end that an agreement might be reached *in the best interest of the pupils involved.* Miller County suggested a meeting between the boards; Morgan denied that a common problem existed and resubmitted its plan of May 27, 1960; Miller resubmitted its plan of June 3, 1960, and appealed to the State Board to determine where said districts should go. Morgan requested that no action be taken until it had an opportunity to study the Miller County plan. That request was followed by a request for an oral "hearing", which the State Board denied on grounds of a priorly established policy, but again suggested that it transmit whatever additional factual information it desired. Instead, Morgan County sought prohibition.

■ Clearly, the State Board believed the facts herein presented constituted a common organization problem requiring it to make the final decision referred to in § 165.673(4). In view of the facts here shown, it would seem presumptuous on the part of this court to hold that a common organization problem did not confront and had not confronted the Miller and Morgan County Boards for a number of years before the jurisdiction of the State Board was invoked by the Miller County Board in accordance with the provisions of § 165.-673(4). To the contrary, we are of the opinion that the inability of these boards to agree upon which of the proposed reorganized districts could best serve the welfare of the pupils in the four unreorganized districts in question presented an organization problem common to both boards; that no solution existed other than to submit the problem to the State Board *for final decision;* and that § 165.673(4) expressly vested the State Board with exclusive jurisdiction to make that decision.

The State Board found that the territory in the four districts in Morgan County, 58, 59, 61 and 62, was more accessible for attendance at school centers in the Miller County proposal and that for the past several years the eligible high school pupils had attended the high school centers in the Miller County proposal. Thus, the State Board decided, in effect, that the best interest of the pupils residing in these four districts required that said districts be incorporated in said Reorganized School District R–I of Miller County. Consequently, when the voters of Reorganized School District R–I of Miller County approved the plan approved by the State Board, said district became and is now lawfully organized; and it follows, of course, that Reorganized School District R–III is illegally organized and that respondents are unlawfully usurping the powers of directors over the districts now lawfully incorporated in Reorganized School District R–I of Miller County.

Respondents are ordered ousted of the right of exercise of any and all jurisdiction over any portion of Reorganized School District R–I of Miller County.